IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARHGA HAIDER d/b/a Amigo Seafood & Steak House, Inc. and Rubes Sport Bar, | ) ) ) | |
| Plaintiff, | ) ) | No. 06 C 3149 |
| v. | ) ) | Chief Judge James F. Holderman |
| ERIC KELLOGG, Mayor of the City of Harvey, et al., | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT

On June 9, 2004, City of Harvey police officers entered and searched a business owned by plaintiff Agha Haider ("Haider").[1] As a result, Haider filed this lawsuit under 42 U.S.C. §§ 1983 and 1985 against the Mayor of the City of Harvey, Eric Kellogg; Mayor Kellogg's brother and alleged "Chief of Mayor's Marshals," Derrick Muhammad; T. Myers; Dreina Lewis; Detective Harris; and Other Unknown Marshals, alleging in pertinent part that ten unknown Marshals, acting at Kellogg's direction, unlawfully executed a warrantless search and seizure of Haider's property and beat Haider up after he had been arrested. Haider also alleged that Kellogg, acting in concert with Lewis, wrongfully withheld renewal of his liquor license. Before this court is the motion for summary judgment filed by defendants Kellogg, Muhammad, Myers, and Lewis [151]. For the reasons stated herein, that motion is granted.

---

[1] Haider's first name was incorrectly spelled in the caption of the complaint as "Arhga" Haider.

Background

In ruling on a motion for summary judgment, this court must consider the facts properly before it in a light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 629 (7th Cir. 2006). Therefore, in considering the defendants' motion the court will review the facts properly before it and draw all reasonable inferences in Haider's favor.

*A.    The Facts*

In his Response to Defendants' 56.1 Statement of Uncontested Facts [226], Haider contested many of the defendants' stated facts. Haider, however, did not comply with Local Rule 56.1(b)(3)(C) in that Haider did not file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." *See* N.D. Ill. R. 56.1(b)(3)(C). Consequently, the only facts properly before the court are those presented in Defendants' 56.1 Statement of Uncontested Material Facts [153], which are as follows:

Haider was the owner of Rube's Sports Bar located at 611 East 157th Street, Harvey, Illinois. (Defs.' L.R. 56.1 Stmt. ¶ 10.) On June 9, 2004, the City of Harvey police department received an anonymous tip that Rube's was operating as a strip club and that prostitution was occurring on the premises. (*Id.* ¶ 19.) The police department was also informed that Rube's did not have a valid City of Harvey business license or entertainment license. (*Id.* ¶ 20.) Acting on the tip, Officer Henry Harris and Officer Antione Anderson went to Rube's in plain clothes, paid a $10 entrance fee using prerecorded funds, and were allowed to enter the premises. (*Id.* ¶¶ 24-25.) Inside Rube's, Harris observed live music being played, female dancers performing

partially nude, and one woman dancing on stage fully nude. (*Id.* ¶¶ 27-28.) The fully nude dancer offered to give Harris a private dance in the "VIP room" for $20. (*Id.* ¶ 29.) Using prerecorded bills, Harris paid the disc jockey $10 to enter the "VIP room," where the dancer offered to have sex with Harris for $300. (*Id.* ¶¶ 30-31.) Later that evening, a second woman offered Harris a private dance for $20. (*Id.* ¶ 32.) Harris again paid the disc jockey $10 to enter the "VIP room," where the woman offered Harris oral sex for $75. (*Id.* ¶¶ 32-33.) Harris then telephoned for other police officers to enter Rube's. (*Id.* ¶ 34.) Haider was arrested for keeping a house of prostitution (*id.* ¶ 36), and the officers recovered $2100 from Haider's pocket; $36 from a cash box; and cash, including $60 in prerecorded funds, from the disc jockey and the two women who solicited money from Harris in exchange for sex (*id.* ¶¶ 40-44).

The remaining named defendants played no role in the investigation or subsequent search of Rube's. While driving home on the evening of June 9, 2004, Mayor Kellogg noticed police activity at Rube's, so he stopped by the scene. (Defs.' L.R. 56.1 Stmt. ¶ 50.) Kellogg arrived at Rube's after the investigation began and after Haider had been arrested. (*Id.* ¶ 51.) Kellogg had no role in the investigation at Rube's nor did he search Haider or the premises. (*Id.* ¶ 52.) Muhammad, a Deputy Marshall at the time of the raid, did not participate in the raid because he was out of town on June 9, 2004. (*Id.* ¶¶ 7, 53.) Myers was a clerk with the City of Harvey Police Department and performed only clerical tasks related to Haider's arrest. (*Id.* ¶¶ 6, 48.) Lewis was employed by the City of Harvey as the Assistant to the Mayor and had no role in activities undertaken by the City of Harvey Police Department. (*Id.* ¶ 8.)

As for the defendants' role in processing Rube's liquor license, defendants admit that Mayor Kellogg was the Liquor Commissioner for the City of Harvey. (*Id.* ¶¶ 4, 64.) To obtain a

City of Harvey liquor license, however, an applicant was required to submit an application to the Department of Planning and Development, pay all applicable fees, and pass a building inspection. (*Id.* ¶ 71.) LaTonya Rufus, the Director of Planning and Development for the City of Harvey, oversaw the City's business and liquor license approval process and explained that she would submit an application to Kellogg for approval only after the applicant submitted the requisite documents, paid all fees, and passed a building inspection. (*Id.* ¶¶ 68, 71.) Rube's liquor license expired on April 30, 2004. (*Id.* ¶ 66.) As of December 8, 2004, Haider had not completed the application process because his building was not in compliance with the City of Harvey Building Code, and so Haider's application for renewal of Rube's license could not be considered for approval. (*Id.* ¶ 69.) Although Lewis held the position of Assistant to the Mayor, Lewis did not assist Kellogg in his capacity as Liquor Commissioner. (*Id.* ¶ 65.)

    B.    *The Procedural History*

Two years (less one day) after the police activity at Rube's, Haider filed this lawsuit against Mayor Kellogg, Muhammad, Myers, Lewis, Harris, and Other Unknown Marshals. Haider filed a "Corrected Second Amended Complaint" approximately three months later, naming the above defendants and adding defendants not at issue here. In his Corrected Second Amended Complaint, Haider alleged four federal claims: (1) on June 9, 2004, defendants, acting at Kellogg's direction, unlawfully entered Rube's, conducted a search of the premises that was not supported by probable cause, and illegally seized Haider's personal property (Count I); (2) Kellogg, acting in concert with Lewis, unlawfully refused to renew Haider's liquor license (Count II); (3) defendants used excessive force against Haider when they "beat [him] about the body" following his arrest (Count III); and (4) defendants conspired to conduct a "Sham Raid"

4

on Haider's business "for the purpose of looting the bar to steal [Haider's] personal properties and money" and to "interfere with [Haider's] right to free enterprise" (Count IV). Haider also alleged three state-law claims. On December 20, 2006, the court dismissed defendant Harris from the lawsuit for insufficient service of process. The court also dismissed the newly-added defendants as well as Haider's state law claims. (Dec. 20, 2006 Minute Order.) Now, the remaining defendants—Kellogg, Muhammad, Myers, and Lewis—request summary judgment in their favor on Haider's remaining claims.

## Analysis

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). Once a properly supported motion for summary judgment is made, the non-moving party cannot rest on its pleadings but must affirmatively demonstrate, by specific factual evidence, that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri*, 458 F.3d at 628. Conclusory allegations, "if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

To assist the court in ruling on a motion for summary judgment, Local Rule 56.1 of the Northern District of Illinois imposes certain requirements on the parties. First, the moving party must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). In return, the opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). If the opposing party wants the court to consider facts in addition to those presented by the moving party, the opposing party must file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). It is within the district court's discretion to require strict compliance with Rule 56.1. *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (collecting cases).

In this case, Haider contested many of the facts set forth in the defendants' Local Rule 56.1 Statement but failed to file a statement of facts as required under Local Rule 56.1(b)(3)(C). Haider also filed a motion to strike some of the defendants' evidence. Thus Haider's strategy appears to be to merely knock out the defendants' evidence, but that is not enough.

Summary judgment is, in the words of the Seventh Circuit, the "put up or shut up" moment in the lawsuit. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). To survive summary judgment, therefore, Haider was required to come forward with evidence demonstrating a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324. The

court is not required to scour the record for evidence supporting a party's argument. *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008).

   *1. Haider's Illegal Search and Seizure Claim (Count I)*

Defendants first argue that they are entitled to summary judgment on Haider's unlawful search and seizure claim because, they contend, "[i]t is uncontroverted that none of the remaining defendants actually conducted the search of Plaintiff or Rube's." (Defs.' Mot. Summ. J. 7.) Haider did not respond to this factual point whatsoever. Instead, Haider argued that a defendant who had previously been dismissed from the case, Harris, did not have probable cause to enter Rube's. As the case record reflects, Harris was dismissed from the case in December 2006 for insufficient service of process. (*See* Dkt. No. 60, Minute Order, Dec. 20, 2006.)

Defendants next argue that they are entitled to summary judgment because, even if Mayor Kellogg directed police officers to search Rube's, Kellogg cannot be held liable for a constitutional violation arising from the search because "there is no supervisory liability under Section 1983." (Defs.' Mot. Summ. J. 8.) To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants acted under color of state law and that the defendants violated the plaintiff's constitutional rights. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). That is, the plaintiff must show that a defendant personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Supervisors may incur Section 1983 liability under certain circumstances. *Chavez*, 251 F.3d at 651.

In response to the defendants' argument concerning Mayor Kellogg, Haider asserts at various points throughout his brief that Kellogg was present at Rube's on June 9, 2004,

7

participated in the police activity at Rube's, and wore a bullet proof vest. (Pl.'s Resp. Mot. Summ. J. 7, 10, 11, 18.) From Kellogg's presence at Rube's, Haider insists that a jury could infer that Kellogg was "in charge of the raid." (*Id.* at 18.) Yet Haider has directed the court's attention to no evidence supporting his theory that Kellogg assumed a supervisory role during the raid at Rube's.

The closest Haider came to identifying evidence of Kellogg's alleged supervisory role is one statement: "[Kellogg] ordered Haider to be arrested. (See Plaintiff's Aff.)." (Pl.'s Resp. Mot. Summ. J. 18.) But the statement in Haider's brief does not accurately characterize the declaration set forth in Haider's affidavit concerning Kellogg's involvement in the arrest, which was: "Kellogg made a hand gesture to one of the armed men to arrest Affiant." (Haider Aff. ¶ 23.) Haider's speculation that Kellogg's hand gesture indicated an order for police officers to arrest Haider is insufficient to raise the inference that Kellogg participated in a violation of Haider's constitutional rights. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (explaining that the court's "favor toward the nomoving party does not extend to drawing inferences that are supported only by speculation or conjecture") (internal quotation marks omitted). Haider made no claim for unlawful arrest stemming from the events of June 9, 2004, in his complaint, and no inference can be drawn from Haider's observation that Kellogg made a hand gesture before police officers arrested Haider that the officers entered and searched Rube's at Kellogg's direction. Haider has therefore failed to come forward with evidence demonstrating that any of the defendants personally participated in, or that Kellogg supervised, any violation of Haider's constitutional rights at Rube's during the police raid as that activity relates to the claims in this litigation.

Accordingly, defendants are correct that the evidence in the record is not sufficient to demonstrate a dispute of material fact requiring a trial as to any of the remaining defendants on Count I of Haider's Corrected Second Amended Complaint. Count I, therefore, cannot survive the defendants' motion for summary judgment.

    2.  *Haider's Unlawful Denial of Liquor License Claim (Count II)*

Next, the defendants argue that summary judgment is appropriate on Haider's claim of an unlawful denial of his liquor license because, they say, there is no evidence in the record that Mayor Kellogg or any other defendant refused to renew Haider's liquor license. Non-renewal of a liquor license can give rise to a claim under 42 U.S.C. § 1983 for denial of due process. *See Club Misty, Inc. v. Laski*, 208 F.3d 615, 618-19 (7th Cir. 2000); *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983). To prevail on a denial of due process claim for non-renewal of a liquor license, the plaintiff must prove that he had a property interest in the license and that the defendant actually deprived the plaintiff of the property right without due process of law. *See Club Misty, Inc.*, 208 F.3d at 618-20; *Reed*, 704 F.2d at 948-49.

As a threshold issue, Haider has failed to demonstrate that he had a property interest in Rube's liquor license. Although the parties did not address this issue in their briefing, the court notes that the liquor licenses granted to Rube's prior to 2004 were issued to "Amigos Seafood & Steakhouse, Inc. d/b/a Rube's Sports Bar." (Pl.'s Resp. Mot. Summ. J., Ex. P.) Consequently, it was the corporation, and not Haider, that possessed the property right at issue in this litigation.

Nevertheless, even if Haider could establish a property right in Rube's liquor license, Haider points to no evidence that Kellogg, alone or in concert with Lewis, was personally responsible for non-renewal of the license. Instead, Haider argues that Rube's applied for and

9

was granted a liquor license each year from 1998 to 2003 as evidence that defendants wrongfully denied renewal of the liquor license in 2004. (Pl.'s Resp. Mot. Summ. J. 8-9; *see* Pl.'s Ex. P.) But Haider's history of acquiring Rube's liquor license in years past is not evidence, by itself, that wrongful conduct by the defendants caused Rube's to be denied renewal of its license in 2004. Haider points to no other record evidence to establish that he was wrongfully denied renewal of Rube's liquor license in 2004 by any of the remaining defendants. Thus summary judgment in the defendants' favor is appropriate on Count II of Haider's Corrected Second Amended Complaint.

### 3. *Haider's Excessive Force Claim (Count III)*

Defendants also argue that summary judgment is appropriate on Haider's excessive force claim because Haider has "utterly failed to connect any of the defendants to his claim of excess force." (Def.'s Mot. Summ. J. 15.) Defendants are correct. Haider not only failed to connect any of the remaining defendants to his excessive force claim by pointing to evidence in support of the claim, but Haider presented no argument in opposition to defendants' motion for summary judgment on this claim. Consequently, Haider has waived his excessive force claim.

### 4. *Haider's Conspiracy Claim (Count IV)*

Finally, the defendants argue that they are entitled to summary judgment on Haider's conspiracy claim because Haider has produced no evidence in support of the claim. Haider brought his conspiracy claim under 42 U.S.C. § 1985(3). (Pl.'s Corrected 2d Am. Compl., Count IV.) To defeat summary judgment regarding a claim under Section 1985(3) a plaintiff is required to come forward with evidence of: "(1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of

equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States." *Keri*, 458 F.3d at 642. In addition, a racial or "class-based invidiously discriminatory animus" must be proved in all Section 1985(3) cases. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see Munson v. Friske*, 754 F.2d 683, 694-95 (7th Cir. 1985).

Haider's briefing in opposition to summary judgment on his conspiracy claim is largely incomprehensible. (*See* Pl.'s Resp. Mot. Summ. J. 18-21.) The only relevant facts the court can extract from the four pages Haider devoted to his claim that (1) "[t]he defendants agreed and conspired to conduct a 'Sham Raid' on the plaintiff's restaurant and bar for the purpose of looting the bar to steal plaintiff's personal properties and money"; and (2) "defendants Kellogg and Lewis acted in concert when they agreed to deny the plaintiff a Harvey Liquor license" (Pl.'s Corrected 2d Am. Compl., Count IV) are:

- Kellogg was present at the raid (Pl.'s Resp. Mot. Summ J. 18);
- Kellogg ordered Haider to be arrested (*id.*);
- Lewis was the mayor's assistant (*id.* at 18-19); and
- Lewis met with Sotomayor, one of the individuals that Haider rented his premises to, effective May 1, 2005 (*id.* at 19).

These four facts do not establish the existence of a conspiracy, and the remainder of Haider's briefing on this issue is best characterized as speculative. Arguments based on speculation and conjecture, however, are insufficient to overcome summary judgment. *Argyropoulos*, 539 F.3d at 737. In addition, Haider never asserted in his complaint or elsewhere that defendants' alleged conspiracy to raid Rube's or to deny Rube's a liquor license was impelled by Haider's race or

other class-based, discriminatory motive. To the contrary, Haider asserted that the defendants had a business motive, not a race or class-based motive, in that the defendants, according to Haider, entered into the alleged conspiracy because they wished to close down Rube's so that Kellogg could purchase the business himself. (Pl.'s Resp. Mot. Summ. J. 4.) Consequently, Haider's Section 1985 claim cannot survive summary judgment.

5. *Miscellaneous*

In his Response to Defendants' Motion for Summary Judgment [226], Haider included two requests of the court. First, Haider asked that he be allowed to amend his complaint to add defendants that, Haider says, he has known about since February 15, 2008. (Pl.'s Resp. Mot. Summ. J. 10, 13.) The Federal Rules of Civil Procedure instruct that a party may amend its pleading after responsive pleadings have been filed only with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). The Rules also state that a "request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Here, defendants have not consented to Haider filing a third amended complaint nor has Haider filed with the court a motion requesting leave to amend his pleadings, even though Haider admits that he has known the identity of the people he wishes to add as defendants for over six months. Instead, Haider buried his request for leave to amend in his response to defendants' motion for summary judgment. Because Haider's request is not properly before the court, the court will not consider the request. *See Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (explaining that district court may decline litigant's request to amend pleadings when request buried in responsive briefing).

Similarly, Haider also requested in his response to defendants' motion for summary judgment that the court strike Harris's affidavit. (Pl.'s Resp. Mot. Summ. J. 17.) Again, Haider

12

failed to make his request to the court by motion, *see* Fed. R. Civ. P. 7(b)(1), so Haider's request will not be considered by the court.

Finally, on review of the docket, the court noticed that Haider filed a document entitled "Rule 56(e) Motion to Strike Exhibits Supporting Defendants' Motion for Summary Judgment" [231] several days after his response to defendants' motion for summary judgment was due. Local Rule 5.3 instructs that "[e]very motion . . . shall be accompanied by a notice of presentment specifying the date and time on which, and the judge before whom, the motion or objection is to be presented." N.D. Ill. R. 5.3(b). Haider never filed a notice of motion, and thus Haider did not properly present his motion to strike to the court. This court therefore will not consider Haider's motion to strike.

## Conclusion

The court grants the defendants summary judgment in favor of defendants Kellogg, Muhammad, Myers, and Lewis. Because summary judgment is appropriate in the defendants' favor for the reasons stated in this Memorandum Opinion and Order, the court need not and has not addressed any of the further arguments raised by the parties in their briefing because none are capable of defeating defendants' motion for summary judgment. Judgment is ordered entered. This case is terminated in its entirety.

ENTERED:

_James F. Holderman_
_____
James F. Holderman
Chief Judge

Dated: September 30, 2008